Trinette G. Kent (State Bar No. 025180)
Kent Law Offices
3219 E. Camelback Rd., # 588
Phoenix, AZ 85018-2307
Telephone: 480-247-9644
Fax: 480-717-4781
tkent@kentlawpc.com

Phillip A. Bock*
David M. Oppenheim*
Jeffrey A. Berman*
Bock Hatch & Oppenheim, LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
Telephone: 312-658-5501
Fax: 312-658-5555
service@classlawyers.com

*to seek *pro hac vice* admission

Attorneys for Plaintiff and the proposed class

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lawrence E. Schwanke, D.C., individually and as the representative of a class of similarly-situated persons and entities, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| SimonMed Imaging LLC, | |
| Defendant. | |

Plaintiff, Lawrence E. Schwanke, D.C. ("Dr. Schwanke" or "Plaintiff"), through undersigned counsel, brings this action on behalf of himself and all other persons and entities that were sent unsolicited advertisements of defendant, SimonMed Imaging LLC ("SimonMed" or "Defendant"), by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Plaintiff makes the allegations based on personal knowledge with respect to facts known to Plaintiff and otherwise on information and belief after a reasonable investigation by counsel.

## PRELIMINARY STATEMENT

1.    The Telephone Consumer Protection Act, 47 U.S.C. § 227, prohibits sending unsolicited advertisements by fax.

2.    The TCPA provides a private right of action and statutory damages of $500 for each violation. 47 U.S.C. § 227(b)(3). If the Court finds the defendant willfully or knowingly violated the Act, it may increase the award to $1,500 per violation. The Court may also grant injunctive relief.

3.    On September 17, 2024, October 18, 2024, November 1, 2024, December 17, 2024, January 13, 2025, January 16, 2025, and January 24, 2025, Plaintiff received unsolicited advertisements from SimonMed on his fax machine. True and correct copies of those faxes

are attached as Exhibits A - G, respectively, and referred to collectively as "the SimonMed faxes."

4.    Each of the SimonMed faxes advertises the commercial availability or quality of property, goods, or services.

5.    SimonMed did not have Plaintiff's prior express invitation or permission to send advertising material to his fax machine.

6.    Plaintiff had no "established business relationship" with SimonMed. 47 U.S.C. § 227(a)(2).

7.    The SimonMed faxes contain no opt-out notice. 47 U.S.C. § 227(b)(1)(C)(i) and (iii).

8.    On behalf of himself and all others similarly situated, Plaintiff brings this action seeking statutory damages for each unsolicited advertisement faxed by or on behalf of SimonMed within the four years before this action commenced and continuing until the Court directs notice to the class.

## PARTIES

9.    Plaintiff, Lawrence E. Schwanke, D.C., a Florida chiropractor, operates a sole proprietorship under the name "Back To Basics Family Chiropractic" in Ocala, Florida.

10.    Defendant, SimonMed Imaging LLC, is an Arizona limited liability company with its principal place of business in

3

Scottsdale, Maricopa County, Arizona. Its statutory agent in Maricopa County is CT Corporation System, 3800 North Central Avenue, Suite 460, Phoenix, AZ 85012.

## JURISDICTION, AND VENUE

11.    The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

12.    Personal jurisdiction exists over SimonMed Imaging LLC in Arizona because it is an Arizona Limited Liability Company, because its principal place of business in Arizona, because it transacts business in and makes or performs contracts substantially connected with the State, or because it committed tortious acts by causing the transmission of unlawful communications within the State.

13.    Venue is proper in the District of Arizona because SimonMed Imaging LLC resides in this District and committed statutory torts within this District, and because a significant portion of the events took place here.

## FACTS

14.    Founded in 2003, and headquartered in Scottsdale, Arizona, SimonMed touts itself as "one of the largest outpatient medical imaging providers and largest physician radiology practices in

4

the United States." https://www.simonmed.com/about/ (last visited 5/21/2025).

15.    In 2021, SimonMed announced a partnership with American Securities LLC, a New York-based private equity firm, intended to support SimonMed's rapid growth. At the time, Dr. John Simon, Founder and Chief Executive Officer of SimonMed stated, "We chose American Securities as the best partner for SimonMed because they bring strategic, functional and financial resources that will support and accelerate our many growth initiatives...." Ben Dickson, a Managing Director of American Securities, similarly explained, "[W]e are excited to work with them to reach more patients by continuing to build density in SimonMed's existing markets, as well as expanding into new markets around the United States." https://www.prnewswire.com/news-releases/simonmed-partners-with-american-securities-301273346.html (last visited 5/22/2025).

16.    In August 2024, SimonMed announced 7 additional locations in Florida, bringing its total Florida locations to 35. https://businessnewsthisweek.com/business/simonmed-imaging-adds-seven-locations-throughout-florida/.

17.    Plaintiff operates a chiropractic practice in Ocala, Florida.

18.    Plaintiff has received at least 7 unsolicited advertisements from SimonMed on his fax machine. True and correct copies are attached as **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, **Exhibit E**, **Exhibit F**, and **Exhibit G**.

19.    Each of these facsimiles was sent by or on behalf of SimonMed.

20.    None of the SimonMed faxes contains the name or number of the sender in the fax header, as required by 47 U.S.C. 227(d)(1)(B), but each prominently displays SimonMed's trademarked logos and slogan, and each directs recipients to SimonMed's website, SimonMed.com, where goods and services may be purchased.

21.    Each of the SimonMed faxes advertises the commercial availability or quality of property, goods, or services.

22.    The first page of **Exhibit A**, received on Plaintiff's fax machine on September 17, 2024, advertises a "Symposium on Advancements in Cardiac CT & Emerging Technologies in Artificial Intelligence" on November 8-10, 2024, and provides details on how to register for "this exciting event," which would require payment of a registration fee.

23.    The second page of **Exhibit A**, also received on Plaintiff's fax machine on September 17, 2024, advertises SimonMed's discounted

"$99* 3D Screening Mammograms for uninsured patients in October," and includes SimonMed's telephone number, fax number, and website for "Breast Image Scheduling."

24.    **Exhibit B**, received on Plaintiff's fax machine on October 18, 2024, advertises a "Symposium on Advancements in Cardiac CT & Emerging Technologies in Artificial Intelligence" on November 8-10, 2024, and provides details on how to register for "this exciting event," which would require payment of a registration fee.

25.    **Exhibit C**, received on Plaintiff's fax machine on November 1, 2024, advertises a "Symposium on Advancements in Cardiac CT & Emerging Technologies in Artificial Intelligence" on November 8-10, 2024, and provides details on how to register for "this exciting event," which would require payment of a registration fee.

26.    The November 2024 symposium, which Plaintiff did not attend, involved presentations by one or more SimonMed employees or contractors, including Dr. James J. Thompson, DO, Director of Innovation and Physical Education at SimonMed, intended to promote or increase SimonMed's business.

27.    **Exhibit D**, received on Plaintiff's fax machine on December 17, 2024, advertises a paid symposium, "The Future of Heart Care: Cardiac CT and Al Technologies Symposium," to occur on

February 22, 2025, described as "a premier gathering geared toward primary care providers and cardiologists, [where] attendees will have the opportunity to engage with renowned experts, dive into real-world clinical applications, and explore the future of cardiovascular care." The fax provides details on how to register for and pay the fee required to attend "this exciting event," including a limited period to receive a 25% discount with a coupon code.

28.    **Exhibit E**, received on Plaintiff's fax machine on January 13, 2025, advertises "The Future of Heart Care: Cardiac CT and AI Technologies Symposium," to occur on February 22, 2025, promoted as "a premier gathering geared toward primary care providers and cardiologists, [where] attendees will have the opportunity to engage with renowned experts, dive into real-world clinical applications, and explore the future of cardiovascular care." The fax provides details on how to register for "this exciting event," which would require payment of a registration fee.

29.    During the 2025 Southwest Florida Cardiovascular Imaging Symposium, which Plaintiff did not attend, Dr. John Simon, Founder and CEO of SimonMed, delivered a presentation that advertised the commercial availability and quality of diagnostic imaging services offered by SimonMed Imaging. During his remarks,

8

Dr. Simon repeatedly emphasized SimonMed's status as one of the largest outpatient cardiac CT providers in the United States, highlighted the company's nationwide platform, promoted its adoption of third-generation artificial intelligence tools, and underscored its ability to deliver safe and accurate cardiac CT angiograms within seconds at a price point of $250 to $400. He referenced SimonMed's origins as a pioneer in outpatient cardiac imaging and framed the company's services as accessible, affordable, and superior in technological capability. These statements went beyond scientific or educational discussion and instead promoted specific medical services to physicians and providers in attendance. *See* "Dr. Simon on Coronary Artery Disease Detection at the 2025 Cardiovascular Imaging Symposium," https://www.youtube.com/watch?v=qAaVKarNgP4 (last viewed 5/22/2025).

30.    **Exhibit F**, received on Plaintiff's fax machine on January 16, 2025, advertises SimonMed's "Special February Pricing" for "360-Degree analysis of … coronary arteries and heart attack risk." The fax states, "To emphasize the importance of this critical scan, we are offering patients $360 CCTA Exams throughout the entire month of February!" and provides details on how to schedule appointments for "lifesaving CCTA exams" at SimonMed.

31.    The first page of **Exhibit G**, received on Plaintiff's fax machine on January 24, 2025, advertises "Same Day & Next Day Appointments for 3D Screening Mammograms" at SimonMed, touting "Extended hours and weekend appointments available in some locations," and providing details on how to schedule paid breast imaging appointments at SimonMed.

32.    The second page of **Exhibit G**, received on Plaintiff's fax machine on January 24, 2025, advertises "February Special $50" pricing for "Cardiovascular Imaging" at SimonMed, and providing details on how to schedule appointments for the paid services at SimonMed.

33.    SimonMed did not have Plaintiff's prior express invitation or permission to send advertising material to his fax machine.

34.    Plaintiff uses his fax machine to send and receive urgent, important, and confidential information, including patient medical records, not to receive unsolicited advertisements.

35.    Fax transmissions operate between ten-digit numbers assigned by the North American Numbering Plan Administrator using the Public Switched Telephone Network and the ITU T.30 protocol under FCC regulation. Each transmission crosses public, regulated telephone lines and contributes to equipment wear and tear. During

transmission, unsolicited faxes may block the line entirely, preventing receipt or transmission of authorized communications.

36.    Unlike paper junk mail delivered to a general mailbox, unsolicited fax advertisements target recipients at their specific 10-digit fax numbers connected to special equipment purchased, leased, or otherwise arranged by the recipient.

37.    Every unsolicited fax imposes costs on its recipient. When automatically printed, as with Plaintiff's machine, unsolicited fax advertisements consume the recipient's paper and toner. Even unprinted fax advertisements cause unnecessary expense. Unsolicited faxes invade privacy and waste valuable time, as someone must examine each incoming transmission to determine its origin and purpose, disrupting workflow in the process.

38.    Plaintiff and the other class members have no obligation to take affirmative steps to attempt to avoid SimonMed's unlawful advertising. Their fax machines are ready to send or receive their urgent or confidential business communications, or private communications about patients, not to receive SimonMed's advertising material.

39.    The TCPA authorizes a person or entity to maintain an action "to recover for actual monetary loss from such a violation, or to

11

receive $500 in damages for each such violation, whichever is greater."

47 U.S.C. 227 (b)(3)(B).

40.    For himself and each class member, Plaintiff seeks statutory, liquidated damages of $500 for each unsolicited advertisement sent by or on behalf of SimonMed.

### CLASS ACTION ALLEGATIONS

41.    Plaintiff brings this lawsuit as a class action on behalf of himself and all other similarly-situated persons and entities who were sent one or more unsolicited fax advertisements from SimonMed.

42.    The proposed class is initially defined as follows:

All persons and entities who received one or more facsimile transmissions on or after May 22, 2021, sent by or on behalf of SimonMed Imaging, and advertising any of the following: (a) medical imaging services, including but not limited to mammograms, cardiac CT scans, CCTA exams, or calcium scoring; (b) paid registration for medical symposiums, seminars, conferences, or continuing education events; or (c) promotional pricing, discounts, or special offers for any medical services or events.

Excluded from the class are the following persons: (a) SimonMed and its parent(s), subsidiaries, affiliates, employees, officers, directors, agents, and representatives, and their immediate family members; and (b) any judge assigned to preside over this litigation, including the members of their immediate family.

43.    Plaintiff intends to discover the full scope of SimonMed's fax advertising.

44.    Plaintiff anticipates modifying the proposed class definition—including proposing subclasses if appropriate—after discovery about SimonMed's fax advertising practices.

45.    This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Rule 23 (a). Additionally, prosecution of Plaintiff's claims separately from the class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

**Numerosity/Impracticality of Joinder**

46.    On information and belief, the class includes more than 40 persons and, thus, is so numerous that individual joinder of the members is impracticable.

47.    The faxes attached as **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, **Exhibit E**, **Exhibit F**, and **Exhibit G** are standardized form advertisements that lack personalization and appear to have been

transmitted through an automated mass-distribution system to bulk recipient lists.

48.    The class members, including their names and fax numbers, are unknown to Plaintiff, but will be identified through discovery from SimonMed's records or the records of third parties.

### Ascertainability

49.    The proposed class is defined based on objective criteria, permitting class members to be identified.

50.    On information and belief, the members of the class may be identified from SimonMed's records or the records of third parties.

### Commonality and Predominance

51.    There is a well-defined community of interest among the class members.

52.    Common questions of law and fact predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another and may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a.    Whether SimonMed or someone acting on its behalf sent material advertising the commercial availability or quality

14

of property, goods, or services through fax transmissions to Plaintiff and the other members of the class;

b.    Whether SimonMed had "prior express invitation or permission" to send advertising material by facsimile transmission to its intended recipients;

c.    Whether SimonMed included on the first page of its fax advertisements a clear and conspicuous opt-out notice;

d.    Whether Plaintiff and the other members of the class are entitled to statutory damages under the TCPA;

e.    Whether SimonMed's actions were knowing or willful and, if so, whether the Court should treble the TCPA statutory damages awarded to Plaintiff and the other members of the class; and

f.    Whether Plaintiff and other members of the class are entitled to equitable relief, including but not limited to injunctive relief.

**Typicality**

53.    Plaintiff's claims are typical of the claims of the class because all class members were injured by the same wrongful practices. Plaintiff and the other class members received unsolicited advertisements by facsimile transmission from SimonMed. Under the

15

facts of this case, if Plaintiff prevails on his claims, then the other class members must necessarily prevail as well.

## Adequacy of Representation

54.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class members he seeks to represent. Plaintiff has retained financially able attorneys who are competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and his counsel will fairly and adequately protect the interests of the class.

## Prosecution of Separate Claims Would Yield Inconsistent Results

55.     Common questions of fact and law predominate. Separate adjudication of class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for SimonMed to operate under if or when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if SimonMed chooses to advertise by fax again in the future.

## Superiority

56.     A class action is the superior method for the fair and efficient adjudication of this lawsuit because individual litigation of

each class members' claims would be economically infeasible and procedurally impracticable.

57.    The damages incurred by each class member from SimonMed's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual class members do not have a significant interest in controlling the prosecution of separate actions. Furthermore, individualized litigation would create the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

58.    Plaintiff foresees no difficulty in the management of this action as a class action. The class members and their statutory damages may be determined based upon information maintained by or available to SimonMed.

# COUNT I

59.    Plaintiff brings Count I on behalf of himself and a class of similarly-situated persons and entities.

60.    Plaintiff incorporates the preceding paragraphs as though fully alleged herein.

61.    The TCPA provides in pertinent part as follows:

(b) Restrictions on use of automated telephone equipment

(1) Prohibitions

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –

(C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless–

(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

(ii) the sender obtained the number of the telephone facsimile machine through–

(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

18

(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and

(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E); or ….

47 U.S.C. § 227 (b)(1)(C).

62.    The TCPA provides a private right of action as follows:

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

1

2

**(A)** an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

3

4

**(B)** an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

5

6

**(C)** both such actions.

7

8

9

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

10

47 U.S.C. § 227(b)(3).

11

12

13

14

15

16

63.     The opt-out notice on an unsolicited advertisement sent by fax must include "a domestic contact telephone and facsimile number for the recipient to transmit such a request to the sender" as well as a "cost-free mechanism for a recipient to transmit a request pursuant to such notice ..." 47 U.S.C. § 227(b)(2)(D)(iv).

17

18

19

20

21

22

64.     "A notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if ... (v) the telephone and facsimile machine numbers and the cost-free mechanism ... permit an individual or business to make such a request at any time on any day of the week." 47 U.S.C. § 227(b)(2)(D)(v).

23

65. "[T]he [Federal Communications] Commission shall prescribe regulations to implement the requirements of this subsection…." 47 U.S.C. § 227(b)(2)(D)(i).

66. The FCC's regulations pertaining to opt-out notices on unsolicited advertisements are set forth at 47 C.F.R. § 64.1200(a)(4)(iii).

67. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

68. Each of the faxes attached as **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, **Exhibit E**, **Exhibit F**, and **Exhibit G** advertised the commercial availability or quality of property, goods, or services.

69. SimonMed did not have Plaintiff's prior express invitation or permission to send any advertising material to his fax machine.

70. Plaintiff had no "established business relationship" with SimonMed. 47 U.S.C. § 227(a)(2).

71. The SimonMed faxes do not have any opt-out notice.

72. Plaintiff intends to discover and include within this action all unsolicited advertisements SimonMed sent by fax.

21

73.    SimonMed violated the TCPA by sending advertisements to Plaintiff and others by facsimile transmission without their prior express invitation or permission and without a compliant opt-out notice.

74.    The TCPA is a strict liability statute, so SimonMed is liable to Plaintiff and the other class members regardless of whether its actions were negligent or well-intentioned.

75.    SimonMed is liable because it sent the faxes, caused the faxes to be sent, or participated in the sending process. The faxes were sent on SimonMed's behalf.

76.    SimonMed knew or should have known that Plaintiff and the other class members had not expressly invited or given express permission to receive SimonMed's advertising material by fax.

77.    SimonMed's actions caused harm. SimonMed's junk faxes invaded each recipient's privacy and right to seclusion and caused Plaintiff and others to lose paper and toner consumed in printing SimonMed's faxes. Moreover, the faxes used Plaintiff's and the class's fax machines, blocked or interfered with the sending and receiving capacity of the machines, increased costs associated with operating and maintaining the fax machines, and otherwise wasted valuable resources.

78.   SimonMed's conduct in sending such unsolicited fax advertisements violates the TCPA, 47 U.S.C. § 227.

79.   Plaintiff does not seek to recover for actual monetary loss. Rather, for himself and every other member of the class, Plaintiff seeks an award of $500 in statutory damages for each of SimonMed's violations of the TCPA.

80.   Plaintiff further requests that the statutory damages be trebled under 47 U.S.C. § 227(b)(3), if SimonMed's violations of the TCPA were knowing or willful.

81.   The Court also should enjoin SimonMed from sending future unsolicited advertisements by fax without the prior express invitation or permission of the intended recipient or a compliant opt-out notice.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly-situated, demands judgment in favor of himself and the entire class and against SimonMed Imaging LLC as follows:

a.   That the Court adjudge, find and decree that this case may be maintained as a class action, certify a class, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as counsel for the class;

b.    That the unlawful conduct alleged herein be declared to be illegal and in violation of the TCPA;

c.    That the Court award $500.00 in statutory damages for each of SimonMed's violations of the TCPA;

d.    That the Court treble the statutory damages if it concludes that SimonMed's violations were willful or knowing;

e.    That the Court enter an injunction prohibiting SimonMed from engaging in the same or similar practices to those alleged herein, specifically prohibiting SimonMed from sending any advertisement by fax without first demonstrating that it has obtained prior express invitation or permission to send advertising material by fax transmission or included a compliant opt-out notice;

f.    That the Court enter judgment against SimonMed and in favor of Plaintiff and the entire class;

g.    That the Court award to Plaintiff and the entire class their costs of the suit; and

h.    That the Court award all other relief allowed by law or equity that the Court deems just and proper.

## **Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all triable issues.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Respectfully submitted,

Lawrence E. Schwanke, D.C.,
individually and as the
representative of a class of
similarly-situated persons,

By: /s/ Trinette G. Kent

Trinette G. Kent (Bar No. 025180)
Kent Law Offices
3219 E. Camelback Rd., # 588
Phoenix, AZ 85018-2307
Telephone: 480-247-9644
Fax: 480-717-4781
tkent@kentlawpc.com

Phillip A. Bock*
David M. Oppenheim*
Jeffrey A. Berman*
Bock Hatch & Oppenheim, LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
Telephone: 312-658-5500
service@classlawyers.com

*to seek *pro hac vice* admission